Shane **MUENCH**

v.

**ALLIANT FOODSERVICE, INC.**

**No. CIV.A.DKC 2001–1517.**

United States District Court,
D. Maryland.

June 12, 2002.

Alan Lescht, Alan Lescht & Associates, PC, Washington, DC, for Plaintiff.

Shane Muench, Bowie, MD, Pro se.

Robert J. Mathias, Christienne B. Boisvert, Denis C. Mitchell, Piper Rudnick LLP, Baltimore, MD, Aaron R. Gelb, Edward C. Jepson, Vedder Price Kaufman and Kammholz, Chicago, IL, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this employment discrimination case is the motion of Defendant, Alliant Foodservice, Inc. ("Alliant") for summary judgment pursuant to Fed.R.Civ.P. 56. The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For reasons that follow, the court will grant the motion for summary judgment.

## I. Background

The following facts are uncontroverted or are in the light most favorable to Plaintiff. Plaintiff Shane Muench was employed as a truck driver by Alliant in its Minnesota facility between December 1998 and May 2000 under the supervision of Richard Laliberte. He was hired by Alliant after serving over six years in the United States Army. After receiving his offer of employment on or about December 28, 1998, Plaintiff underwent a DOT-mandated physical examination and completed a form with medical history questions. He did not disclose at that time that his left leg is shorter than his right leg, causing him to suffer from migraine headaches, chronic back strain, and collapsed arches, all of which are allegedly degenerative problems that cannot be mitigated by med-

ication. The migraines cause him to suffer "nauseau, vomiting, blind spots in [his] vision, noise and light sensitivity, [and] debilitating attacks." Paper no. 18, Ex. 1, at 52. Plaintiff's shortened leg affects his ability to walk, run, causes the aforementioned pain and discomfort that "hinders just about every aspect of [his] life." *Id.*, at 235–236. In addition, Plaintiff did not disclose to Alliant that he had filed for disability benefits from the Army, or that the Veterans' Administration rated him as partially disabled and paid him $744 a month.

Plaintiff was injured on three separate occasions while on the job in the spring and summer of 1999. His supervisor, Laliberte, berated Plaintiff after each injury. In March, 1999, after Plaintiff tore a muscle in his back and was put on light duty for a week, Laliberte told him that if he could not perform his job, Laliberte would put him to work in the freezer. Paper no. 18, Ex. 1, at 84. Then, in June, 1999, a load bar fell on Plaintiff's wrist and a cyst developed. When informed of the injury, Laliberte told Plaintiff that Plaintiff was of no use to him if he could not perform his duties and accused him of malingering. Plaintiff underwent surgery to remove the cyst, missed two weeks of work, and filed a worker's compensation claim. When Plaintiff returned to light duty, Laliberte told him he should quit or look for other employment. *Id.*, at 85–96. Finally, in July 1999, Plaintiff fell and bruised his tailbone after which he missed four days, filed another worker's compensation claim, and returned to light duty. *Id.*, at 103–104.

Laliberte called Plaintiff into his office in August 1999 and "asked what is this disability bullshit." In addition, he asked Plaintiff if he was a disabled veteran, told Plaintiff he was going to fire him and

accused him of falsifying his employment application. *Id.*, at 120–121.

After failing to find another job with a company in the Minneapolis area during the summer of 1999 and motivated by what he characterizes as Laliberte's harassment of him, Plaintiff decided to transfer to an Alliant office in Maryland, where his wife wanted to move. Id., at 150, 153. Plaintiff spoke with Sandy Hadaway, Alliant's Human Resources Manager in its Maryland District in November, 1999. Plaintiff regarded this conversation as exploratory and no timeline or commitment was discussed. Paper no. 17, Muench Dep., at 157–158. Plaintiff called Hadaway again in February 2000 to inform her that he would be moving to Maryland in April and that he would come by her office the first week of May. While Plaintiff was on hold, Hadaway conferred with the Vice President of Operations, Larry Hanson. Hadaway then told Plaintiff that Hanson was interested in him coming to work in the Maryland District, though no hours, wages or duties were discussed and no offer of employment was made.

Pursuant to this conversation, Plaintiff informed Laliberte that he had arranged for a transfer to Maryland and that he intended to leave his employment in Minneapolis. Laliberte told Plaintiff that he would have to fill out required paperwork and within several weeks presented him with an Employee Status Change Report. Paper no. 17, Muench Dep., at 176–178. According to Laliberte, he completed the form, signed by Plaintiff, so that the Minneapolis District would have a record of why Plaintiff terminated his employment. Paper no. 17, Laliberte depo., at 5–7.

About a month before Plaintiff was to move, Laliberte asked Plaintiff to take a delivery route on his scheduled day off. When Plaintiff refused, Laliberte told him that he was refusing to work and could be

fired for that. Paper no. 17, Muench Depo, at 184. In addition, he told Plaintiff, "Your transfer is less than a month away and I am not going to forget this. Do what you have to do, I am going to do what I have to do." Paper no. 18, Ex. 1, at 185. While Plaintiff was not terminated as a result of this incident, apparently he received a written warning. Paper no. 17, Muench Depo., at 184.

Shortly before leaving Minnesota, Plaintiff called Hadaway and left a message on her voicemail explaining that the sale of his house was scheduled and that he would be arriving in Maryland in early May. Several days later, she responded to his voicemail and told him that she might not have any jobs available as a delivery driver in Alliant's Maryland district. Plaintiff replied that he was moving anyway and that he would come in as planned.

Plaintiff moved his family to Maryland at the beginning of May. On or about May 9, 2000, Plaintiff met with Hadaway at Alliant's facility in Savage, Maryland. Hadaway had Plaintiff wait outside of her office and he overheard her on the phone telling somebody, "he is here, what do you want me to tell him... they said not to hire him." Paper no 18, Ex. 1, at 202. Hadaway then reiterated what she had told Plaintiff on the phone during their last conversation and asked Plaintiff to give her his phone number in case any openings became available. Paper no. 17, Muench Depo., at 204–205. Alliant hired no delivery drivers at its Savage facility between March 2000 and May 2001.

Plaintiff filed a two-count Complaint against Alliant in the Circuit Court for Prince George's County that was removed to this court on May 24, 2001. In Count I, Plaintiff claims that Alliant wrongfully terminated him in violation of Maryland public policy in retaliation for filing workers' compensation claims. In Count II, Plaintiff claims that Alliant violated the Americans with Disabilities Act ("ADA") by terminating him because of his disability.

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct.

2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III.

### A. ADA Claim

The ADA, 42 U.S.C. § 12112(a), provides that no covered entity, including private employers:

shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment.

As a threshold matter, Plaintiff must establish that he is a qualified individual with a disability within reach of the Rehabilitation Act. The Act defines the term "disabled individual" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." *Id.,* see also 29 U.S.C. § 705(20)(B) (1998). "Major life activities" are defined by the EEOC as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2001). "Accordingly, to fall within the definition one must have an actual disability (subsection (A)), have a record of a disability (subsection (B)), or be regarded as having one (subsection (C))." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 478, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

The Supreme Court recently fleshed out the meaning of the test for substantial limitation:

> We therefore hold that to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.... It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those "claiming the Act's protection...

to prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience... is substantial."

*Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691–692, 151 L.Ed.2d 615 (2002), *quoting Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

Plaintiff does not set forth evidence demonstrating that he is disabled under this test. Plaintiff alleges that he is disabled because his left leg is two inches shorter than his right, causing him to suffer from headaches, back strain and collapsed arches and that the leg affects his ability to walk and run and "hinders just about every aspect of my life." Paper no. 18., Ex. 1, at 235–236. Further, Plaintiff claims that his health problems are degenerative and cannot be mitigated by medication. Plaintiff sets forth his medical records which allegedly document his disability as well as documents demonstrating the determination of the Department of Veterans Affairs that Plaintiff has a 50% service-connected disability. Paper no. 17, Ex. 2.

■ These documents are insufficent to establish that Plaintiff was disabled within the meaning of the ADA. First, Plaintiff does not even allege that he was unable to perform at work due to his alleged disability.[1] None of his workplace injuries are related to his alleged disability and he sought to continue working as a delivery driver after his injuries despite the alleged disability. Second, while Plaintiff alleges that he is hindered in the performance of many daily activities by his health problems, there is no evidence that those health problem prevent or severely restrict him from carrying on major life activities. It is insufficient for Plaintiff merely to "submit evidence of a medical diagnosis of an impairment" without forecasting evidence of how those impairments substantially limit major life activities. *Toyota,* 122 S.Ct. at 691–692.[2] Finally, the medical records submitted by Plaintiff do not support his description of his disability. Plaintiff alleges that one leg is two inches shorter than the other and that his alleged disabilities were unable to be mitigated by medication. The records indicate that there is less than a two centimeter difference between the legs, not two inches, and that the problem is a "mild limb discrepancy" and "easily made up for with a lift in his left show." Paper no. 18, Ex. 2, at A23, A9. Therefore, Plaintiff fails to establish that he was afflicted with a disability within the meaning of the ADA.

■ In the alternative, Plaintiff alleges that he is a qualified individual because

---

**1.** Both the Supreme Court and the Fourth Circuit have expressly reserved the question whether working can be a major life activity. *Toyota,* 122 S.Ct. at 689; *Pollard v. High's of Baltimore, Inc.,* 281 F.3d 462, 471–472 (4th Cir.2002).

**2.** In addition, Plaintiff alleges in his complaint that he had a record of disability, though he makes no mention of this allegation in his opposition. In any case, the evidence on the record indicates that Plaintiff could not prove this claim. Plaintiff is, "required to establish that [he] had 'a history of, or has been *misclassified* as having, a mental or physical impairment that substantially limits one or more major life activities.' " *Rhoads v. Federal Deposit Insur. Corp.,* 257 F.3d 373, 391 (4th Cir.2001), quoting 29 C.F.R. § 1630.2(k) (2000). As above, the medical records relating to his army disability status are not sufficient to establish that Plaintiff is disabled for the purposes of the ADA. Furthermore, those records were never disclosed to Alliant, so it cannot be charged with knowledge of this record of Plaintiff's disability. Accordingly, there is no record of disability to establish that Plaintiff is a qualified individual for the purposes of the ADA.

was regarded by Alliant as being disabled. In order to demonstrate that he was regarded as disabled, Plaintiff must show that, "(1) [his] employer 'mistakenly believe[d] that [he] has a physical impairment that substantially limits one or more major life activities,' or (2)[his] employer 'mistakenly believe[d] that an actual, non-limiting impairment substantially limits one or more major life activities.'" *Rhoads*, 257 F.3d at 390, *quoting Haulbrook · v. Michelin North America, Inc.*, 252 F.3d 696, 702–03 (4th Cir.2001).

None of the evidence presented by Plaintiff indicates that Laliberte or Alliant mistakenly believed Plaintiff to be disabled or unable to perform his job, let alone other major life activities, because of a disability. To the contrary, evidence set forth regarding Laliberte's alleged harassment of Plaintiff with regard to his workplace injuries indicate Laliberte's frustration with Plaintiff for not working when he considered Plaintiff to be capable of working. Plaintiff points to his August 1999 conversation with Laliberte · in which Laliberte asked him "what is this disability bullshit" and whether he was a disabled veteran. During this conversation, Laliberte told Plaintiff he would fire him for falsifying his employment application. This conversation does not support Plaintiff's allegation that Alliant perceived him as being disabled. Rather, Laliberte was surprised to discover, as he apparently had, Plaintiff's status as a disabled veteran.[3] Plaintiff presents no evidence that Alliant mistakenly believed him to be disabled or unable to perform his job because of disability. Accordingly, Plaintiff does not qualify as an individual with a disability for the purposes of the ADA and sum-

mary judgment will be granted as to Plaintiff's ADA claim.

### B. Retaliation for Workers' Compensation

In Count I of the complaint, Plaintiff alleges that he was wrongfully terminated in violation of Maryland public policy in retaliation for filing workers' compensation claims. However, in his opposition, Plaintiff fails to address this claim as separate from his ADA claim. Instead, Plaintiff attempts to apply the test for violation of the ADA to both claims, conflating the evidence relating to his disability with that related to alleged harassment he received for filing workers' compensation claims. Plaintiff does not set forth any Maryland law regarding the test for wrongful termination or address Alliant's contention that he cannot prove that he was terminated solely and directly for filing workers' compensation claims. Even assuming that Plaintiff intends to press his count for wrongful termination in retaliation for his workers' compensation claim, as opposed to because of his disability, there is no evidence that he was terminated at all, let alone in response for filing the claims.

Actions for abusive discharge are "inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by [its own] civil remedy." *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 605, 561 A.2d 179 (1989). "Discharging an employee solely because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy." *Ewing v. Koppers Company, Inc.*, 312 Md. 45, 50, 537 A.2d 1173 (1988). However, "[t]o sustain a wrongful discharge action under Mary-

---

**3.** In any case, to the extent that the conversation demonstrates that Alliant took an adverse job action against Plaintiff, it would supports

a finding that Plaintiff was terminated for falsifying his application, not for his disability.

land's workers' compensation statute, an employee must allege that he or she was discharged solely and directly because of filing for benefits under § 39A or that his or her termination violated a recognized rule of law." *Kern v. South Baltimore General Hospital*, 66 Md.App. 441, 452, 504 A.2d 1154 (1986) (Plaintiff unable to sustain a claims where she admits that absenteeism was a factor in her discharge); *see also Adler v. Am. Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981); Md.Code Ann., Lab. & Empl. § 9–1105. *Adler v. American Standard Corp.*, 291 Md. 31, 47, 432 A.2d 464 (1981).

■ Plaintiff must first demonstrate that he was discharged. "Ordinarily, an employee who resigns would not have a right of action for abusive discharge." *Pollard*, 281 F.3d at 472, *citing Beye v. Bureau of Nat'l Affairs*, 59 Md.App. 642, 477 A.2d 1197 (1984). Plaintiff argues that Alliant allowed him to put in for a transfer and then sabotaged his chances to get a job at Alliant in Maryland. Plaintiff sets forth two pieces of evidence which, he argues, demonstrate that Alliant withdrew approval for his transfer to Maryland and terminated him; a document from the Minnesota Department of Economic Security that he characterizes as indicating that he was terminated for unreported absences, Paper no. 18, Ex. 6 [4], and Hadaway's phone conversation that he overheard when he arrived at the Alliant facility in Maryland. Plaintiff points to this evidence in an attempt to paint as pretextual Alliant's stated reason for failing to hire Plaintiff at its Maryland facility.

However, Plaintiff's evidence does not place in dispute that Plaintiff voluntarily left his job. Plaintiff's own evidence demonstrates that he voluntarily sought a transfer to an Alliant district in Maryland, arranged to leave his job in Minnesota of his own accord, and made no attempt to retain his job with Alliant in Minnesota even though he was informed by Hadaway before moving that there might be no jobs available for him in Maryland. While Plaintiff potentially casts doubt on Alliant's stated reasons for not hiring him in Maryland, that there were no jobs available, he does place in dispute that he left Alliant voluntarily.

■ Finally, though not actually terminated, Plaintiff indicates that his desire to transfer was brought on in part because of his unhappiness with his treatment by a supervisor. However, Plaintiff's alleged harassment at the hands of Laliberte falls far short of the standard for constructive discharge. "Maryland courts have applied an objective standard in determining whether an employee was constructively discharged." *Williams v. Maryland Dept. of Human Resources*, 136 Md.App. 153, 178, 764 A.2d 351 (2000). Under Maryland law:

> the standard for measuring whether a resignation is actually a constructive discharge is "whether the employer has deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign." [*Beye*, 477 A.2d] at 1203. By using strong words such as

4. On its face, this document seems to demonstrate that Plaintiff quit his job, though there is some unclear handwriting at the bottom of the page which was cut off on the copy submitted as evidence. Alliant does not challenge Plaintiff's characterization of this document, instead claiming that a clerical error by a company hired by Alliant to process personnel record was the source of the unreported absences record. Whether the document was accurate is irrelevant, however, because Plaintiff's evidence demonstrates that he left Alliant in Minnesota voluntarily.

"deliberately," "intolerable," and "compelled," Maryland courts, like those in most states, have set a high standard for constructive discharge claims. *Pollard*, 281 F.3d at 472. While Plaintiff has submitted evidence that Laliberte told him he should quit his job and occasionally berated him for his injuries, Plaintiff has set forth no evidence that his working conditions were intolerable or that Laliberte took any action against Plaintiff which could comprise a constructive discharge. Therefore, Plaintiff presents no evidence that he was terminated by Alliant or that his decision was not voluntary. Accordingly, he could not have been wrongfully terminated and summary judgment will be granted as to Count I.

## IV. Conclusion

For the foregoing reasons, Alliant's motion for summary judgment will be granted. A separate order will be entered.

### ORDER

In accordance with the accompanying Memorandum Opinion, IT IS this ___ day of June, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion for summary judgment under Fed.R.Civ.P. 56 BE, and the same hereby IS, GRANTED;

3. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Alliant Foodservice, Inc., and against Shane Muench; and

4. The Clerk transmit copies of the Memorandum Opinion and this Order to Plaintiff and to counsel for Defendant and CLOSE this case.