678 A.2d 615

**Marjorie A. GASKINS**

**v.**

**MARSHALL CRAFT ASSOCIATES, INC.**

**No. 1630, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

July 1, 1996.

706

708

John J. Leidig, Baltimore, for Appellant.

Ronald W. Taylor (Todd J. Horn and Venable, Baetjer and Howard, LLP, on the brief), Baltimore, for Appellee.

Argued before BISHOP, FISCHER and HARRELL, JJ.

FISCHER, Judge.

Marjorie A. Gaskins appeals from an order by the Circuit Court for Baltimore City that granted Marshall Craft Associates, Inc.'s (Marshall) Motion to Dismiss Gaskins's civil complaint without leave to amend. Gaskins filed a two count complaint against Marshall for damages stemming from an alleged violation of the Maryland Equal Pay for Equal Work Act,[1] and a claim of wrongful discharge. Gaskins presents the following questions for our review, which have been combined and reworded:

I. Did the circuit court err in dismissing Count I of Gaskins's complaint because it found that section 29 U.S.C. § 206(d)(1) preempts Md.Code, LE § 3–304?

II. Did the circuit court err by dismissing Count II of Gaskins's complaint because it found a preexisting statutory remedy?

III. Did the circuit court err by dismissing Gaskins's complaint without leave to amend?

## FACTS

Between November 1988 and April 1995, Gaskins was employed at Marshall as a project manager on an at-will basis.

---

1. The Maryland Equal Pay for Equal Work Act, Md.Code (1991 Repl. Vol., 1995 Supp.), § 3–304 of the Labor and Employment Art, was patterned after the Federal Equal Pay Act, 29 U.S.C. § 206(d)(1) (1978, 1996 Cum.Supp.), which is contained in the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. In this case, the circuit court found that the Federal Equal Pay Act preempted the Maryland Equal Pay Act, and thus dismissed Count I of Gaskins's complaint because Gaskins did not raise a claim under the federal act. Throughout our discussion, in order to avoid confusion, we shall refer to the Federal and Maryland Equal Pay Acts by their statutory citations.

In November 1994, Gaskins raised concerns about disparate wage rates between male and female project managers. In a letter dated November 18, 1994, a Marshall executive wrote to Gaskins and stated, "We continue to believe that your [Gaskins's] rate of pay is appropriate for the tasks you perform as a project manager." Marshall fired Gaskins on March 30, 1995.

After being terminated, Gaskins filed a two-count civil complaint against Marshall. In Count I, Gaskins sued for violation of Md.Code, LE § 3–304 and asked for $60,000 damages. In Count II, Gaskins sued for common law wrongful discharge and asked for $250,000 damages. After the circuit court granted Marshall's motion to dismiss Gaskins's complaint without leave to amend, Gaskins filed this timely appeal.

## DISCUSSION

### I.

█ Gaskins argues that the circuit court erred by finding that 29 U.S.C. § 206(d)(1) preempted Md.Code, LE § 3–304. Marshall counters that the circuit court's finding of preemption was correct.

█ There are three basic categories of federal preemption: (1) when Congress places specific language in a statute announcing its intention to preempt state law, *i.e.*, express preemption; (2) when state law conflicts with federal law, *i.e.*, conflict preemption; and (3) when Congress's legislation is so comprehensive that it occupies an entire field or regulation, *i.e.*, field preemption. *California v. ARC Am. Corp.*, 490 U.S. 93, 100–101, 109 S.Ct. 1661, 1664–65, 104 L.Ed.2d 86 (1989). The Supreme Court will find field preemption:

█ Where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation .... [or 2] Where the field is one in which "the federal interest is so dominant that the federal system will be

assumed to preclude enforcement of state laws on the same subject."

*Hillsborough County v. Automated Medical. Labs., Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)) (internal citations omitted).

■ The starting point for any preemption inquiry relies on the following presumption, "Pre-emption of state law by federal statute ... is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.'" *Chicago & N.W. Tr. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)); *see also Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law."); Lawrence Tribe, *American Constitutional Law* § 6.25, at 479 (2d ed.1988) (stating that the Supreme Court's decisions display "an overriding reluctance to infer preemption in ambiguous cases").

■ In order to make a finding of field preemption, a court must embark on a judicial quest for the "Holy Grail" of preemption—congressional intent. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992); *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978). The search for congressional intent with regard to field preemption is an arduous task because no concrete indicia, such as express language or established law, exists that divulges congressional intentions to preempt state laws. *See* Paul E. McGreal, *Some Rice with your Chevron? Presumption and Deference in Regulatory Preemption,* 45 Case W. Res. L.Rev., 823, 837

(1995) (stating that, of the preemption doctrines, field preemption is the weakest indicator of congressional intent).

■■ Although determining congressional intent can be a fruitless task, which often results in a finding of judicial intent rather than congressional intent, there are several reliable criteria that help determine whether Congress has occupied a field. The degree of federal regulation and the type of federal interest promoted are both indicia of congressional intent. *See, e.g., New York Dept. of Social Servs. v. Dublino,* 413 U.S. 405, 413–417, 93 S.Ct. 2507, 2513–2515, 37 L.Ed.2d 688 (1973); *Zschernig v. Miller,* 389 U.S. 429, 440–441, 88 S.Ct. 664, 670–671, 19 L.Ed.2d 683 (1968); *cf.* McGreal, *supra,* at 838 (noting that the Supreme Court "has been hesitant to find either type of field preemption absent something more specific"). The wording of the act itself, which includes the statute's expressly stated policy objectives, also helps establish a congressional intent to preempt. *Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617; *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Finally, some courts employ extrinsic aids, such as the legislative history, to flush out congressional intent.[2] *E.g., City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *Board of Trustees v. City of Baltimore,* 317 Md. 72, 562 A.2d 720 (1989), *cert. denied, Lubman v. City of Baltimore,* 493 U.S. 1093, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990).

■ Congress enacted FLSA "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 739, 101 S.Ct.

---

2. Marshall did not employ the extrinsic aid of legislative history in its brief to this Court. In its memorandum to the circuit court, however, Marshall included a brief legislative history argument. It is enough to say that one sentence chosen out of the volumes of legislative history is not persuasive evidence of congressional intent to preempt state laws.

1437, 1444, 67 L.Ed.2d 641 (1981) (quoting 29 U.S.C. § 202(a)). 29 U.S.C. § 206(d)(1) complements the FLSA's stated policy by ensuring that employers do not "discriminate ... between employees on the basis of sex by paying" different wages based on an employee's gender.

Marshall does not argue, nor do we believe, that the FLSA involves a comprehensive scheme of federal regulation that demonstrates Congress "left no room" for supplementary state regulation or that the FLSA involves a dominant federal interest that we can assume precludes enforcement of state laws on the same subject. Additionally, there is nothing in the wording of the FLSA that indicates congressional intent to preempt state laws. Instead, Marshall insists that "equal pay claims require the fashioning of a body of uniform laws" because "conflicts of state and federal law frustrate the efforts of Congress to stimulate the smooth functioning of the Equal Pay Act."

■ This Court recognizes that the FLSA is a remedial statute, which should be given a broad interpretation in order to fulfill its remedial policy. *Corning Glass Works v. Brennan,* 417 U.S. 188, 208, 94 S.Ct. 2223, 2234–35, 41 L.Ed.2d 1 (1974); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 77, 517 A.2d 730 (1986). We are unaware, however, of any precedent that indicates federal remedial statutes per se require uniform national laws in order to further their remedial policy objectives, especially when Congress chose not to include any express preemption language. The Supreme Court has noted:

> Undoubtedly, every subject that merits congressional legislation is, by definition, a subject of national concern. That cannot mean, however, that every federal statute ousts all related state law. Neither does the Supremacy Clause require us to rank congressional enactments in order of importance and hold that, for those at the top of the scale, federal regulation must be exclusive.

*Hillsborough County,* 471 U.S. at 719, 105 S.Ct. at 2378.

In fact, we fail to see how allowing state unequal pay claims to go forward will hinder the federal policy of preventing

disparate pay based on gender. The FLSA established a baseline rule to which employers must conform. Allowing state statutes that promote equal pay, *e.g.*, Md.Code § 3–304, does not retard this goal. Instead, it helps promote and enforce it.

■■■■■ The doctrine of conflict preemption provides a safety net that ensures that states do not fall below federal standards. *See Maryland*, 451 U.S. at 746, 101 S.Ct. at 2128–29 (stating that state laws which conflict with federal law are "without effect"); *Harrison v. Schwartz*, 319 Md. 360, 364, 572 A.2d 528, *cert. denied*, 498 U.S. 851, 111 S.Ct. 143, 112 L.Ed.2d 110 (1990) (stating that "when valid federal law actually conflicts with state law, the former preempts the later"). The FLSA will preempt any state law that dips below the FLSA baseline.

Marshall maintains that "if Congress had not intended to occupy the field of equal pay and preempt state regulation, it would have made it clear as it did with respect to overtime, minimum wage, and child labor in Section 218." This argument, however, is based on a *presumption for congressional intent to preempt* that is contrary to case law that established a *presumption against congressional intent to preempt.*[3]

## II.

■■■■■ Gaskins argues that the circuit court erred by dismissing her complaint for common law wrongful discharge. Marshall counters that Gaskins's legal claim for wrongful discharge was properly dismissed because an available civil statutory remedy exists.

■■■■■ Maryland recognizes the tort of wrongful discharge, albeit with one caveat. *Adler v. American Standard Corp.*, 291 Md. 31, 47, 432 A.2d 464 (1981); *Miller v. Fairchild*

---

**3.** Because the circuit court found that 29 U.S.C. § 206(d) preempted Md.Code, LE § 3–304, it did not decide Marshall's second claim in support of its motion to dismiss, the question of the statute of limitations. This question will need to be addressed on remand.

*Indus.,* 97 Md.App. 324, 629 A.2d 1293, *cert. denied,* 333 Md. 172, 634 A.2d 46 (1993). This cause of action is only recognized "where the employer's motivation in discharging the employee contravenes some clear mandate of public policy." *Adler,* 291 Md. at 47, 432 A.2d 464. The Court of Appeals has also added, "Where the public policy foundation for the abusive discharge claim is expressed in a statute, and that statute already contains a remedy for vindicating the public policy objectives, then judicial recognition of an abusive discharge claim is considered both redundant and inappropriate." *Makovi v. Sherwin–Williams Co.,* 316 Md. 603, 561 A.2d 179 (1989).

In this case, Gaskins looks, *inter alia,* to the FLSA, Title VII, and Md.Code (1957, 1994 Repl.Vol.), Art. 49B, § 16 as policy sources to support her argument that her firing contravened "some clear mandate of public policy." These provisions, however, all provide mechanisms for redressing equal pay violations and retaliatory or abusive dismissals. *See* 29 U.S.C. § 215(a)(3); 42 U.S.C. § 2000e–3(a) (1988); Md.Code, Art. 49B, §§ 16(a)(1) & (f). Therefore, the very statutes that Gaskins relied on to establish her policy claim provided a remedy for her cause of action.[4]

## III.

 Gaskins argues that the circuit court erred when it dismissed her complaint without leave to amend, as opposed to

---

4. Gaskins insists that her claim should not have been dismissed because her firing violated a clear public policy mandate against sex-based wage discrimination. In Maryland, however, suits for wrongful discharge brought against a private employer based on alleged constitutional violations are not viable. *Miller v. Fairchild Indus.,* 97 Md.App. 324, 337–338, 629 A.2d 1293, *cert. denied,* 333 Md. 172, 634 A.2d 46 (1993). Gaskins also argues that her claim should not have been dismissed because her firing violated "multiple sources" of public policy. Gaskins's multiple sources argument is the byproduct of misinterpreting *Watson v. Peoples Security Life Ins. Co.,* 322 Md. 467, 588 A.2d 760 (1991) and reliance on the dissents in *Chappell v. Southern Maryland Hosp., Inc.,* 320 Md. 483, 578 A.2d 766 (1990) and *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981). Thus, it is enough to say that her "multiple sources" argument lacks any legal support.

with leave to amend. Marshall counters that the circuit court did not abuse its discretion by dismissing Gaskins complaint and denying her leave to amend. In view of our holding in I, *supra,* we need only consider this argument insofar as it affects Count II of Gaskins's complaint.

 Maryland Rule 2–322(c) states, in part, "If the court orders dismissal [of a claim], an amended complaint may be filed only if the court expressly grants leave to amend." The circuit court's decision not to grant leave to amend will not be overturned on appeal unless it is an abuse of discretion.

The scope to which a complaint can be amended is controlled by Maryland Rule 2–341(c), which allows parties to amend complaints to

(1) change the nature of the action or defense, (2) set forth a better statement of facts concerning any matter already raised in pleading, (3) set forth transactions or events that have occurred since the filing of the pleading sought to be amended, (4) correct misnomer of a party, (5) correct misjoinder or nonjoinder of a party ..., (6) add a party or parties, (7) make any other appropriate change.

In this case, there was nothing Gaskins could have done within the scope of Rule 2–341(c) that would have made her complaint viable as to Count II. Therefore, we cannot say that the circuit court abused its discretion in dismissing that aspect of Gaskins's claims without leave to amend.

**JUDGMENT AS TO COUNT I VACATED.**

**JUDGMENT AS TO COUNT II AFFIRMED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLANT TO PAY ONE–HALF THE COSTS AND APPELLEE TO PAY ONE–HALF THE COSTS.**