Emmanuel J. DEMESME, Jr.

v.

MONTGOMERY COUNTY GOVERNMENT, et al.

No. CIV. L–97–1112.

United States District Court, D. Maryland.

Aug. 12, 1999.

Eric Steele, Washington, D.C., for plaintiff.

Charles W. Thompson, Jr., Montgomery County Attorney, and Joann Robertson, Patricia P. Via, and Sharon V. Burrell, Assistant County Attorneys, for defendants.

## MEMORANDUM

LEGG, District Judge.

Pending before the Court is the defendants' Motion for Summary Judgment. The issues have been fully briefed, and the Court finds that a hearing is not necessary. *See* Local Rule 105.6 (D.Md.1997). For the reasons set forth in this Memorandum, the defendants' Motion for Summary Judgment shall be, by separate Order, GRANTED.

### Background

The plaintiff, Emmanuel J. Demesme, Jr., worked from 1978 until his dismissal in 1997 for the Montgomery County Department of Transportation ("the County").[1] Demesme drove buses for the County's Ride On bus service until 1991, when he was promoted to the position of transit coordinator.

Transit coordinators serve as a liaison between Ride On management and bus operators in the field. Their duties involve:

> monitoring, coordinating, directing and reporting on a portion of the County Government's public bus services, including initiating short-term corrective actions to maintain delivery of safe, timely and efficient transit service throughout a large geographical area of Montgomery County.

(*See* Def. Exh. 1, Class Specification for Transit Coordinator). The job specification further describes the position as serving as the " 'eyes and ears' of transit service management." (*Id.*)

---

1. The plaintiff has named as defendants: the Montgomery County Government; Carolyn Biggs, an administrator with the Ride On bus service; and Graham J. Norton, Director of the County Department of Public Works and Transportation.

Plaintiff was demoted from transit coordinator to bus driver and ultimately dismissed from County employment following three incidents on November 25, 1995; January 20, 1996; and April 30, 1997. The essential details of each incident are described below.[2]

On November 25, 1995, Ride On experienced a temporary shortage of bus drivers. As a result of this shortage, the plaintiff and another transit coordinator were requested by Mr. Mansfield Jones, who was serving as desk coordinator on that day, to drive a bus. Plaintiff, as a transit coordinator, did not routinely drive buses. Driving was, however, one of the duties of transit coordinators. (*See* Def. Exh. 1 at 3). The other transit coordinator responded affirmatively to Jones's request.

The plaintiff declined to drive a bus and refused to return to the central dispatch office when called via radio. The defendants allege that plaintiff claimed he had a medical condition which precluded him from driving.[3] Plaintiff allegedly repeated the statement that he was certified as medically unable to drive a bus to a supervisor two days later. (*See* Def. Exh. 3, Coston Aff.). As a result of this claim, the plaintiff was placed on non-driving duties and ordered to undergo a medical exam.

On January 20, 1996, while still assigned non-driving duties pending a medical examination, the plaintiff was accompanying a driver as a "bus checker." The bus developed mechanical problems. After contacting Ride On officials, the driver of the impaired bus was directed to switch buses with another driver. When the switch was about to be made, the plaintiff, without authority, waved off the other bus and prevented the switch from taking place. (*See* Def. Exh. 7, Perry Aff.). As a result, service was disrupted.

Following the January 20 incident, Ride On reassigned plaintiff to a data entry position. The pending request for a medical examination was expanded to include a psychological examination. On February 8, 1996, the County's occupational medicine section gave plaintiff a clean bill of health, both medically and psychologically.

The defendants then initiated disciplinary proceedings to demote plaintiff from transit supervisor to bus driver. The notice of charges stated that plaintiff had engaged in disruptive behavior, made false statements regarding his medical condition, and shown "total disregard for authority." (*See* Def. Exh. 10, 5/13/96 Statement of Charges). Before the demotion took effect, plaintiff was given notice and an opportunity to respond to the charges against him, which he did. The demotion took effect on June 9, 1996. (*See* Def. Exh. 11).

On April 30, 1997, plaintiff, while operating a bus, called the central dispatch office to request a bus change. Another driver offered to switch buses with plaintiff. Plaintiff switched buses, but only after verbally abusing the driver who offered her bus in exchange. (*See* Def. Exh. 22).

Later that same day, the plaintiff reported over the radio that he was experiencing problems and demanded that a supervisor meet him in the parking lot at Montgomery Mall. Plaintiff, despite repeated urging by transit supervisors, refused to discuss the problem over the radio. When two supervisors appeared, plaintiff refused to speak to the two of them together. After one supervisor boarded the bus, the plaintiff acknowl-

---

2. The parties agree that the three incidents in question led to the plaintiff's termination, but disagree somewhat on the exact details of each incident. The Court, with one exception, has resolved disputes of fact in favor of the plaintiff, but has included additional details provided by the defendants and not contradicted by the plaintiff.

3. The plaintiff disputes that he ever told any County employees he could not drive because of a medical condition. Numerous records created soon after the incident, however, are unanimous in their recollection that plaintiff gave medical reasons as his excuse for refusing to drive.

edged that the transmission warning light was lit. (*See* Def. Exh. 23 at 2).

Following the April 30, 1997 incident, formal charges of dismissal were filed by the County. (*See* Def. Exh. 13). Before the dismissal became effective, however, the plaintiff was injured in an on-the-job accident and granted a service connected disability retirement. (*See* Def. Exh. 16). Due to his retirement, plaintiff's union did not pursue an appeal of his termination.

The plaintiff filed the present lawsuit on April 14, 1997, prior to his termination. The complaint was amended to add a retaliation claim, which has since been abandoned by the plaintiff.[4] The Second Amended Complaint contains two counts under 42 U.S.C. § 1983. Count one alleges that the defendants violated the plaintiff's right to due process by terminating him unjustly. Count two charges the defendants with racial discrimination, a violation of the equal protection clause.[5]

The parties conducted extensive discovery. Plaintiff sought and received access to the personnel files of other transit coordinators who were subject to discipline. (*See* June 30, 1998 Order, Dkt. No. 25).[6] Following the close of discovery, the defendants filed the motion for summary judgment presently before the Court.

## Discussion

The Court may grant summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether there is a genuine issue of materi-

al fact, the Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Pulliam Inv. Co., Inc. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

Material factual disputes are "genuine" only if a reasonable jury could return a verdict for the non-moving party based upon the record as a whole. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505.

Specific facts in evidence must support the claims and demonstrate that a genuine issue for trial exists. *Kimsey v. Myrtle Beach,* 109 F.3d 194, 195 (4th Cir.1997). "Merely colorable" or "not significantly probative" evidence is insufficient to withstand summary judgment. *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

In *Thompson Everett,* the Fourth Circuit made clear that the showing required of the non-moving party is a substantial one:

> While it is axiomatic that Rule 56 must be used carefully so as not to improperly foreclose trial on genuinely disputed, material facts, the mere existence of some disputed facts does not require that a case go to trial. The disputed facts must be material to an issue necessary for the proper resolution of the case, and the *quality and quantity of the evidence* offered to create a question

---

4. *See* Pl. Opp to Def. Mot. Summ. J. at 8 fn. 6.

5. The two counts of the complaint intermix the due process and equal protection claims. The counts are entitled "Violation of Section 1983—Equal Protection" and "Violation of Section 1983—Racial Discrimination." The parties have briefed the summary judgment

motion, however, as if count one stated a due process claim and count two an equal protection claim.

6. These records were produced subject to a confidentiality order.

of fact *must be adequate to support a jury verdict.*

*Id.* at 1323 (emphasis added). Of course, in determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

*Due Process Claim*

Plaintiff alleges that the County deprived him of a property interest without due process of law. In his pleadings opposing summary judgment, plaintiff describes count one as a "substantive due process" claim.

The Court finds such a characterization to be inapposite. Plaintiff alleges that he was terminated in violation of the County's personnel regulations. Accordingly, his claim is not that the County was unable to terminate his employment, but rather that the method used was improper. The Court will treat count one as alleging a procedural due process violation.[7]

Plaintiff's due process claim rests on the 14th Amendment stricture that "nor shall any State deprive any person or life, liberty, or property, without due process of law." *See* U.S. Const. amend. XIV, § 1. Plaintiff alleges that he had a property interest in his continued public employment, which the County took from him.

■ The Supreme Court has established a framework for evaluating employ-ment-related due process claims brought by government employees. *See Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). A viable due process claim must contain two elements. First, there must be an identifiable constitutionally protected property interest. The courts look to state law in determining whether such a property interest exists. *See Bd. of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. 2701 ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ."). If the Court finds that the plaintiff was deprived of a protected interest, it must then determine whether, under the circumstances, the process granted violated federal constitutional norms. This determination is entirely one of federal law. *See Cleveland Bd. of Educ.,* 470 U.S. at 541, 105 S.Ct. 1487.

■ In the present case, it appears clear that Demesme had a property interest in his job. The applicable employment regulations protected him from arbitrary termination, thereby removing plaintiff's employment from the background Maryland rule of at-will employment. *See Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464, 467 (1981); Stanley Mazaroff, *Maryland Employment Law* § 1.8 (1990).

---

7. Plaintiff cites *Harrington v. Harris,* 118 F.3d 359 (5th Cir.1997), as authority for his substantive due process claim. In *Harrington,* the Fifth Circuit stated:

> To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious.

118 F.3d at 368 (citing *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993)). The above definition essentially restates the traditional procedural due process standard with a heightened "arbitrary or capricious" standard.

In another part of his brief, plaintiff cites other, more persuasive authority that substantive due process comes into play where "certain governmental conduct would remain unjustified even it were accompanied by the most stringent of procedural safeguards." *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1500 (11th Cir.1985) (finding substantive due process violation in police excessive force case). Terminating an employee for insubordination does not fall within the realm of substantive due process violations.

■ It is also clear, however, that Demesme received all the process to which he was entitled. Prior to both his demotion and termination, plaintiff received notice and opportunity to be heard. Nothing more is required by the Constitution.

Plaintiff identifies one section of the County personnel regulations which require a three-month probationary period before involuntarily demoting a worker. From the face of the regulations, it is clear that this requirement applies only to employees receiving *subpar marks on annual employment evaluations.* In situations where immediate disciplinary action is taken in response to inappropriate work behavior, the three month period would not apply. (*See* Def. Exh. 28 at 27–30). Accordingly, the due process claim in count one is without merit, and the defendants' motion for summary judgment must be granted as to that claim.[8]

*Equal Protection Claim*

Count two of the second amended complaint alleges that the demotion and termination of the plaintiff by the defendants were racially motivated. While the plaintiff has brought his claim as a direct constitutional violation under the Fourteenth Amendment and § 1983, the Title VII proof scheme adopted by the Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies. *See Beardsley v. Webb,* 30 F.3d 524, 529 (4th Cir.1994).

Under *McDonnell Douglas,* a plaintiff must first make out a prima facie case of discrimination. Once a prima facie showing is made, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. To ultimately prevail, the plaintiff must then demonstrate that the proffered non-discriminatory reason is a pretext for discriminatory motives.

When alleging discriminatory discharge or demotion, a plaintiff, to establish a prima facie case, must demonstrate: (1) that he or she is a member of a protected class; (2) that he or she was discharged or demoted; (3) that he or she was performing the job satisfactorily, meeting the employer's legitimate expectations; and (4) that the discharge or demotion occurred under circumstances that raise a reasonable inference of unlawful discrimination. *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 310, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455 (4th Cir. 1989).

■ The plaintiff is an African–American, and he was both demoted and discharged. (*See* Def. Exhs. 11 & 15). He was not, however, meeting the legitimate expectations of his employer. The record clearly demonstrates that the plaintiff was disciplined following the initial two incidents before finally being terminated following the third. While plaintiff disputes the defendants' versions of the events resulting in disciplinary proceedings, he has offered no evidence beyond his own bare denials.

Furthermore, the plaintiff has produced no evidence giving rise to an inference of discrimination. Many of plaintiff's immediate supervisors are also African–American, including Mr. Kenneth Taylor, who recommended that he be demoted and then dismissed. The fact that the decision makers were of the same protected class suggests no discriminatory motivation. *See e.g. Love v. Alamance Co. Bd. of Educ.,* 757 F.2d 1504, 1509 (4th Cir.1985). The record contains no evidence whatsoever of racial animus directed towards the plaintiff.

8. Plaintiff has also failed to establish any facts that would support a substantive due process violation. Aside from the plaintiff's assertion that he was unfairly treated, there is no evidence to show that the defendants acted arbitrarily or capriciously in demoting or dismissing the plaintiff. While the plaintiff denies claiming he was medically excused from driving on November 28, 1995, all of the evidence in the case supports the defendants' version of events. Accordingly, no material dispute of fact exists sufficient to create a jury question as to the propriety of defendants' response to the November 28, 1995 incident.

Plaintiff repeatedly claims that the defendants have produced no white employees who were terminated under similar circumstances. The defendants counter that no other employees of any race were terminated under these circumstances. Plaintiff, in an attempt to show he was discriminated against on the basis of race, cannot rest on the singularity of his own situation. Because plaintiff has failed to establish a prima facie case under *McDonnell Douglas,* the defendants' motion for summary judgment must be granted.[9]

### Conclusion

For the aforementioned reasons, the Court shall GRANT the defendants' Motion for Summary Judgment in its entirety.

### *ORDER*

For the reasons stated in a Memorandum of even date, the Court hereby:

(i) GRANTS the defendants' Motion for Summary Judgment (Dkt. No. 30); and

(ii) DIRECTS the Clerk to CLOSE this case.

---

**9.** Because the Court finds that plaintiff has not established a prima facie case of discrimination, it need not resolve whether defendants Biggins and Norton would enjoy qualified immunity for the alleged constitutional violations.