909 A.2d 1087

**Robert M. HIGGINBOTHAM, II**

v.

**PUBLIC SERVICE COMMISSION OF MARYLAND et al.**

**No. 2346 Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Oct. 26, 2006.

---

256

**260**

Kathleen Cahill, Towson, for Appellant.

Susan S. Miller, Baltimore, for Appellee.

Panel: KENNEY, SHARER and WOODWARD, JJ.

KENNEY, Judge.

Robert M. Higginbotham, II, appeals the decision of the Circuit Court for Baltimore City dismissing his complaint against the Public Service Commission of Maryland and Chairman Kenneth D. Schisler. He presents three questions,[1] which we have recast as five:

---

**1.** Higginbotham presents the following issues:

 1. Whether the lower court erred in granting the motion to dismiss where Appellant had properly pled a claim for relief under Article 24 of the Maryland Constitution.

 2. Whether the lower court erred in granting the motion to dismiss where Appellant had properly pled a claim for compensatory damages under Article 24 of the Maryland Constitution.

 3. Whether the lower court erred in granting the motion to dismiss without leave to amend, where amendment would have made Appellant's claim viable, and no unjust delay or prejudice would have resulted.

1. Does the circuit court's grant of the Chairman's motion to dismiss constitute an appealable final judgment?

2. Did the circuit court err in dismissing Higginbotham's claim that his termination violated his due process rights?

3. Did the circuit court err in dismissing Higginbotham's claim that he was illegally terminated?

4. Did the circuit court abuse its discretion in refusing to grant Higginbotham leave to amend his complaint?

5. Did the circuit court err in dismissing Higginbotham's claims for compensatory damages?

For the following reasons, we shall reverse the circuit court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

Higginbotham was employed by the Public Service Commission ("the Commission") as a Public Information Officer from January 1999 until April 16, 2004, when Chairman Kenneth D. Schisler ("the Chairman") informed Higginbotham that his employment was terminated. Higginbotham appealed his termination to the Chairman on April 30, 2004. The appeal was denied on May 12, 2004.

On June 10, 2004, Higginbotham brought suit in the Circuit Court for Baltimore City against the Commission and the Chairman, individually and in his official capacity. He raised two counts in the complaint. In the first, entitled "Maryland Declaration of Rights," he asserted that his termination "deprived [him] of rights secured by the Maryland Constitution, including but not limited to the right to procedural and substantive due process." In the second count, entitled "Petition for Judicial Review," Higginbotham argued that the Commission "acted illegally, unconstitutionally, arbitrarily, capriciously, and unreasonably, in that [it] terminated plaintiff's employment unilaterally, without legal authority, and without notice, hearing, impartiality, or recourse or process for plaintiff." Claiming "lost wages, damage to his reputation, emotional distress, and loss of enjoyment of life," he sought

reinstatement with back pay, or, in the alternative, damages in the amount of $500,000.

The Chairman filed an answer and a motion to dismiss on July 23, 2004.[2] In his motion to dismiss, the Chairman argued that Higginbotham was subject to removal at will, that he did not have a constitutionally protected liberty or property interest in continued employment, and that there was no statutory right to judicial review of the Chairman's denial of his appeal. With respect to Higginbotham's claim for compensatory damages, the Chairman asserted that he had failed to properly follow the procedural requirements of the Maryland Tort Claims Act and that the Chairman enjoys governmental immunity from liability. The Chairman further argued that Higginbotham's "vague assertions that the Defendant violated state and federal law are insufficient to support a claim," and that Higginbotham had "failed to allege any facts supporting a claim that Chairman Schisler acted with malice or was grossly negligent."

After having been granted an extension of time by the court, Higginbotham responded to the Chairman's motion to dismiss on September 13, 2004. He asserted that he was "[u]narguably ... entitled to certain legal protections prior to discharge" and "protection against unconstitutional or illegal conduct in the termination of his employment." In a footnote on the first page of his opposition to the motion, Higginbotham noted that there was a similar case pending before the court, *Wilson v. Public Service Commission,* Case No. 24–C–04–004553.[3] Wilson, whose employment was termi-

---

2. In his answer, the Chairman alleged that Higginbotham had "failed to serve the Public Service Commission." In a memorandum in support of his motion to dismiss, the Chairman stated that he had been served with Higginbotham's complaint on June 23, 2004, but that "[t]he Public Service Commission has never been served." The Chairman urged that Higginbotham's "entire Complaint ... must be dismissed."

3. The documents related to the *Wilson* case are not part of the record in this case, but were included by Higginbotham in the appendix to his appellant's brief. Generally, we may not consider documents that are not in the record before us. *Forward v. McNeily,* 148 Md.App. 290,

nated by the Chairman the day before Higginbotham's, had brought similar claims against the Commission. The Commission moved to dismiss Wilson's claims on June 30, 2004. After a hearing, the court denied the motion to dismiss on October 25, 2004. By the same order, it granted Wilson's motion for summary judgment, and ordered "that the Plaintiff shall be immediately reinstated as Manager of Public Relations with all the duties and responsibilities of the office of Manager of Public Relations as well as full back pay and back benefits from the date of termination to the date of reinstatement."

In his opposition to the motion to dismiss, Higginbotham conceded that he had not previously satisfied the requirements of the Tort Claims Act, but stated that he was not at that time raising tort claims. He argued that the issues of the Chairman's immunity and malice or gross negligence by the Chairman should be considered only after the completion of discovery.

Higginbotham stated that he "d[id] not oppose the motion as to the Petition for Judicial Review," but noted that he would "move to amend [his complaint] to include [a] claim for a writ of mandamus." In his memorandum in support of his opposition to the motion to dismiss, Higginbotham stated that he "does not oppose the motion as to the Petition for Judicial Review, and instead, moves to amend to include his claim for a writ of mandamus."

In a reply memorandum in support of his motion to dismiss, the Chairman argued that it was inappropriate for Higginbotham to move to amend his complaint in a memorandum in opposition to a motion to dismiss. The Chairman

---

309, 811 A.2d 855 (2002). We may, however, take judicial notice of proceedings in another case when failing to do so "would offend 'the ends of justice.'" *Id.* (quoting *James v. State,* 31 Md.App. 666, 685, 358 A.2d 595 (1976)). Because of the unique circumstances in this case, we shall take judicial notice of the October 25, 2004 order of the Circuit Court for Baltimore City in *Wilson v. Public Service Commission,* case number 24-C-04-004553.

urged the court not to consider the motion to amend. Neither party requested a hearing on the Chairman's motion.[4]

The court granted the motion to dismiss in an order dated October 19, 2004. The court's order merely states: "UPON CONSIDERATION OF the Motion to Dismiss, Memorandum in Support Thereof and Reply Memorandum of the Public Service Commission and Chairman Kenneth D. Schisler and the Plaintiff's Opposition thereto ... the Motion to Dismiss is GRANTED." The court did not provide reasons for dismissal, or address the Commission's failure to respond to Higginbotham's complaint, the *Wilson* case, or Higginbotham's request to amend his complaint.

On October 22, 2004, Higginbotham filed his amended complaint. On October 29, 2004, he moved for reconsideration, or to alter or amend judgment. The court denied Higginbotham's motion on November 23, 2004. Higginbotham noted this appeal on December 20, 2004.

## STANDARD OF REVIEW

The following standard of review applies on appeal from the grant of a motion to dismiss:

"The proper standard for reviewing the grant of a motion to dismiss is whether the trial court was legally correct. In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." In reviewing the complaint, we must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven."

---

4. Maryland Rule 2-311(f) provides that "[a] party desiring a hearing on a motion other than a motion filed pursuant to Rule 2-532, 2-533, or 2-534, shall request the hearing in the motion or response under the heading 'Request for Hearing.'"

*Britton v. Meier,* 148 Md.App. 419, 425, 812 A.2d 1082 (2002) (citations omitted) (quoting *Fioretti v. Md. State Bd. of Dental Exam'rs,* 351 Md. 66, 71–72, 716 A.2d 258 (1998); *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993)).

## DISCUSSION

### I. Final Judgment

At oral argument on March 8, 2006, Higginbotham asserted that the circuit court's grant of the motion to dismiss is not a final judgment because it pertains only to the Chairman, the Commission having failed to file an answer or pretrial motion. The Chairman responded that the Commission was never properly served, and that, even if it was properly served, it had joined in the Chairman's motion to dismiss, which pertained to the complaint as a whole.

A named defendant becomes a party to the action only when the defendant is properly served. *State Highway Admin. v. Kee,* 309 Md. 523, 529–30, 525 A.2d 637 (1987). If the circuit court's judgment resolved all claims against the parties over whom it has acquired jurisdiction, i.e., all parties who were properly served, the judgment is final and appealable. *Id.* In his complaint, Higginbotham named the Commission and the Chairman. The docket indicates that summonses were issued on June 16, 2004, for the Commission, the State, and the Chairman.[5] The docket does not show that the summonses were served or returned, and there is no proof of service in the record. Assuming that the parties were not served (because there was nothing in the record at the time to indicate that they were), the Chairman waived service by responding to the complaint, and therefore became a party to the action. *See Prof'l Staff Nurses Ass'n v. Dimensions*

---

5. Although Higginbotham named only the Commission and the Chairman in his complaint, the docket lists three defendants: the Commission, the State, and the Chairman. With respect to the Chairman and the State, the docket indicates that service was to be effected on the "Office of the Attorney General of the State of Maryland." Susan Stevens, of the Public Service Commission, is also listed as "Attorney" for the Commission.

*Health Corp.,* 110 Md.App. 270, 276 n. 1 677 A.2d 87 (1996), *aff'd,* 346 Md. 132, 695 A.2d 158 (1997); *LVI Envtl. Servs. v. Academy of IRM,* 106 Md.App. 699, 707, 666 A.2d 899 (1995). The court's order granting the Chairman's motion to dismiss Higginbotham's claims is clearly a final judgment.[6]

■■■■ Moreover, "unless fettered by a Rule or statute, a court ordinarily may take any action *sua sponte* that it can take in response to a motion, including dismissal of an action." *Fischer v. Longest,* 99 Md.App. 368, 381, 637 A.2d 517 (1994). A circuit court can dismiss a complaint as to all named defendants, even based on a motion to dismiss submitted by only one of the defendants if the grounds for the dismissal applied to all named defendants. If the Commission was properly served, the lack of evidence in the record notwithstanding, it was a party to the action irrespective of its failure to respond to the complaint. In its order, the court referred to the motion to dismiss as having been submitted by both the Commission and the Chairman. We are persuaded that the court effectively dismissed the complaint as to both defendants, even if the motion was offered by the Chairman only.

## II. Due Process

Higginbotham argues that he pleaded properly a claim of violation of his procedural and substantive due process rights under Article 24 of the Maryland Declaration of Rights,[7] and that he is entitled to compensatory damages for those constitutional violations. The Chairman responds that the court properly dismissed Higginbotham's claim because he does not

---

6. In this context, the court's reference to the motion to dismiss as having been filed by the Commission and the Chairman is irrelevant, the court having never obtained personal jurisdiction over the Commission.

7. Article 24 of the Maryland Declaration of Rights states: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

have a property interest in continued employment, and therefore may be terminated at will.

Article 24 "protect[s] an individual's interests in substantive and procedural due process." *Samuels v. Tschechtelin*, 135 Md.App. 483, 523, 763 A.2d 209 (2000). "To be successful in an action alleging denial of procedural due process in violation of a property interest, a plaintiff must demonstrate that he had a protected property interest, that he was deprived of that interest, and that he was afforded less process than was due." *Id.* at 523, 763 A.2d 209. A colorable property interest in a position of employment requires " 'a legitimate claim of entitlement' " to continued employment. *Id.* at 524, 763 A.2d 209 (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). That claim must be grounded on a source of law apart from Article 24 itself, i.e., "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Samuels,* 135 Md.App. at 524, 763 A.2d 209.

According to the January 1999 letter from the then Chairman offering the position to Higginbotham, a Public Information Officer is "a Special Appointment position." Maryland Code (1993, 2004 Repl. Vol.), § 11–305(a)–(b) of the State Personnel & Pensions Art. ("SPP"), which "applies to an employee who is in a position . . . under a special appointment," states that the employee "(1) serves at the pleasure of the employee's appointing authority; and (2) may be terminated from employment for any reason, solely in the discretion of the appointing authority." Generally, "a non-tenured State or local government employee who serves 'at will' is *not* regarded as having a property right in continued public employment." *Elliott v. Kupferman,* 58 Md.App. 510, 520, 473 A.2d 960 (1984). Higginbotham therefore does not have a property interest in continued employment.

"In the context of dismissals from employment, one's *liberty* interest may be implicated where the employee

has no cognizable right to the continued employment, but the dismissal serves to fetter some other Constitutional right that he does have." *Elliott,* 58 Md.App. at 519, 473 A.2d 960. An employee's liberty interest may have been violated if his termination,

> is the result of unlawful discrimination, or when it is in retribution for the exercise of First Amendment or other Constitutional rights, or when it is accompanied by charges that might damage the employee's reputation in the community and he is given no opportunity to respond, or where it imposes upon him some stigma or disability that forecloses other employment opportunities (such as barring him from other public employment).

*Id.* (citations omitted).

In his complaint, Higginbotham alleged "damage" and "serious harm to his reputation." Nevertheless, his factual averments established only that he "was employed by the Public Service Commission," and that he was "abruptly" informed "that his employment was terminated." Assuming the truth of his averments, they do not establish that his termination violated a protected liberty interest. Accordingly, we are not persuaded that the circuit court erred in dismissing Higginbotham's claim of deprivation of procedural due process.

Higginbotham also states generally that his termination was a violation of his substantive due process rights. Because he made no factual averments and fails to cite any legal authority in support of that proposition, we are not obliged to consider his argument. It "is not our function to seek out the law in support of a party's appellate contentions." *Anderson v. Litzenberg,* 115 Md.App. 549, 578, 694 A.2d 150 (1997).

But, were we to consider Higginbotham's substantive due process claim, we would conclude that the circuit court did not err in dismissing it. "Substantive due process is a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding 'the

fairness of the procedures used to implement them.'" *Love v. Pepersack,* 47 F.3d 120, 122 (4th Cir.1995) (quoting *Weller v. Dep't of Social Servs.,* 901 F.2d 387, 391 (4th Cir.1990)).[8]

In general terms, "substantive due process places a restraint on the use of government power beyond that imposed by procedural due process; public officials must grant an individual certain procedural formalities and, in addition, cannot arbitrarily deprive an individual of a constitutionally protected interest even if they follow the proper procedure." *Samuels,* 135 Md.App. at 533, 763 A.2d 209 (quoting David H. Armistead, Note, *Substantive Due Process Limits on Public Officials' Power to Terminate State–Created Property Rights,* 29 Ga. L. Rev. 769, 774 (1995)).

In *Maryland Classified Employees Ass'n, Inc. v. State,* 346 Md. 1, 694 A.2d 937 (1997), state employees challenged the constitutionality of a statute that altered certain employee benefits. The Court of Appeals surmised that one of the employees' arguments "seems to be based on some notion of substantive due process." *Id.* at 21, 694 A.2d 937. The Court rejected the argument, stating that no "Supreme Court case of which we are aware gives a State employee a lifetime Constitutional right to continued State employment, protected by a theory of *substantive* due process.[9] Nor have we ever found

---

8. "Both Article 24 and the Due Process Clause of the Fourteenth Amendment [of the United States Constitution] protect an individual's interest in substantive and procedural due process. Accordingly, our courts have long equated the Due Process Clause and Article 24." *Samuels,* 135 Md.App. at 522–23, 763 A.2d 209 (footnote and citations omitted). We cite to federal interpretations of the Due Process Clause as persuasive authority in considering issues under Article 24.

9. There is disagreement among federal courts of appeals as to whether termination of public employment implicates substantive due process rights. Some courts have held that continued state employment is not a "fundamental" right, and therefore termination does not implicate substantive due process rights. *See Nicholas v. Pennsylvania State University,* 227 F.3d 133, 138–43 (3d Cir.2000) (and cases cited therein). Other courts have stated that a terminated public employee may "'succeed with a claim based on substantive due process in the public employment context'" by showing "'(1) that he had a property interest/right in the employment, and (2) that the public employer's termi-

such a right under Article 24 of the Maryland Declaration of Rights." *Id.* at 22, 694 A.2d 937 (citation omitted).

In *Samuels*, we rejected a former public employee's contract-based claim that his termination violated his right to substantive due process. We noted that his claim "concern[ed] purported property and liberty interests." *Id.* at 533, 763 A.2d 209. We concluded that "an alleged state-law contract right" to continued employment is not "so fundamental as to require substantive due process." *Id.* at 534, 763 A.2d 209. We also held that "the 'liberty' interest that appellant contends is implicated here is not of such a character as to warrant substantive due process protections under State law." *Id.* at 537, 763 A.2d 209. Thus, the circuit court did not err in dismissing Higginbotham's substantive due process claim.

Higginbotham also contends that he "had properly brought a claim for compensatory damages under the Maryland Declaration of Rights." In *Samuels*, we stated the law with respect to damages for a violation of an individual's rights under Article 24:

Absent legislative waiver, the doctrine of sovereign immunity precludes a damages action against the State for alleged violations of Article 24. But, a public official who violates a plaintiff's Maryland constitutional rights may be personally liable for compensatory damages. Thus, an individual who has been deprived of his liberty or property interests in violation of Article 24 "may enforce those rights by bringing a common law action for damages."

---

nation of that interest was arbitrary or capricious.' " *Harrington v. Harris,* 118 F.3d 359, 368 (5th Cir.1997) (quoting *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993)). The United States District Court for the District of Maryland has opined that the rule espoused in *Harrington* "essentially restates the traditional procedural due process standard with a heightened 'arbitrary or capricious' standard." *Demesme v. Montgomery County Government,* 63 F.Supp.2d 678, 682 n. 7 (D.Md.1999). In *Demesme,* the court rejected the plaintiff's claim that his termination, allegedly in violation of county personnel regulations, was a deprivation of his substantive due process rights, finding instead that his claim was based on procedural due process. *Id.* at 682.

*Samuels,* 135 Md.App. at 522, 763 A.2d 209 (citations omitted) (quoting *Widgeon v. Eastern Shore Hosp. Ctr.,* 300 Md. 520, 538, 479 A.2d 921 (1984)).

Assuming the circuit court concluded that Higginbotham's complaint does not present valid claims of deprivation of his rights to procedural and substantive due process, we agree. We turn, then, to whether the complaint presented a valid claim that his termination constituted a statutory violation.

## III. Statutory Violation

Although he does not address it as a separate question, Higginbotham argues that he was subject to removal only by the "appointing authority" within the agency. He contends that the full Commission is the appointing authority and therefore the Chairman did not have the legal authority to unilaterally terminate his employment. The Chairman responds that Higginbotham did not raise this as a separate claim before the circuit court. He argues that, because the only substantive count in Higginbotham's complaint was a cause of action based on Article 24, the court's dismissal was not erroneous.

With respect to the proper form of pleadings, Maryland Rule 2–303 states:

(a) **Paragraphs, counts, and defenses.** All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances.... Each cause of action shall be set forth in a separately numbered count....

(b) **Contents.** Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings are required. A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense. It shall not include argument, unnecessary recitals of law, evidence, or documents, or any immaterial, impertinent, or scandalous matter.

Pursuant to Maryland Rule 2–305, "[a] pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain a clear statement of the facts necessary to constitute a cause of action and a demand for judgment for relief sought."

Rule 2–322(b)(2) permits a defendant to respond to the complaint with a motion to dismiss for "failure to state a claim upon which relief can be granted." " 'In considering a motion to dismiss for failure to state a claim under Maryland Rule 2–322(b)(2), a [trial] court must assume the truth of all well-pleaded material facts and all inferences that can be drawn from them.' " *Tavakoli–Nouri v. State,* 139 Md.App. 716, 725, 779 A.2d 992 (2001) (quoting *Rossaki v. NUS Corp.,* 116 Md.App. 11, 18, 695 A.2d 203 (1997)). " 'The grant of a motion to dismiss is proper [only] if the complaint does not disclose, on its face, a legally sufficient cause of action.' " *Tavakoli–Nouri,* 139 Md.App. at 725, 779 A.2d 992 (quoting *Rossaki,* 116 Md.App. at 18, 695 A.2d 203).

In *Tavakoli–Nouri,* we reversed the grant of a motion to dismiss with respect to a complaint that included a claim that the plaintiff's "legal right and civil rights" were violated, although the claim was not properly titled. We reasoned:

When reviewing an original pleading, an appellate court "cannot sustain its dismissal if the facts therein set forth present, on their face, a legally sufficient cause of action." *See Shah v. HealthPlus, Inc.,* 116 Md.App. 327, 332, 696 A.2d 473, *cert. denied,* 347 Md. 682, 702 A.2d 291 (1997). Moreover, it is not essential for the plaintiff to identify the particular "legal name" typically given to the claim he has pled. The critical inquiry is not whether the complaint specifically identifies a recognized theory of recovery, but whether it alleges specific facts that, if true, would justify recovery under any established theory. Essentially, a complaint is sufficient to state a cause of action even if it relates "just the facts" necessary to establish its elements. This is consistent with the "notice" purpose of the modern complaint; "[a] pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement

to relief. . . ." Md. Rule 2–303(b); *see Scott v. Jenkins,* 345 Md. 21, 28, 690 A.2d 1000 (1997).

*Tavakoli–Nouri,* 139 Md.App. at 730–31, 779 A.2d 992.

■ In this case, Higginbotham averred in his complaint that the Chairman, unilaterally, had terminated his employment in contravention of State law, and sought reinstatement of his employment:

### Factual Allegations Common to All Counts

8. Plaintiff Higginbotham was employed by the Public Service Commission from 1999 until his discharge on April 16, 2004.

\* \* \*

10. Nonetheless, abruptly, on April 16, 2004, [the Chairman] told plaintiff that his employment was terminated. The stated effective date was April 29, 2004.

11. [The Chairman] undertook to terminate plaintiff's employment unilaterally, and despite the fact that the full Commission was not consulted or involved in any manner, as was required by clearly established law. Further, had the full Commission been consulted, the majority of the members would not have agreed that plaintiff's employment should be terminated.

12. [The Chairman] acted without notice, hearing, impartiality, or authority, and without recourse or process for plaintiff.

13. [The Chairman] was advised by the Attorney General for the State of Maryland, the members of the Commission, concerned public officials, and plaintiff and the other terminated employees, of the wrongful and unlawful nature of his acts. Nonetheless, he knowingly proceeded in disregard of the clearly established law, sending plaintiff and the discharged employees into unemployment, despite years of dedicated service.

\* \* \*

## COUNT ONE

(Maryland Declaration of Rights)

16. Plaintiff Higginbotham incorporates by reference the allegations above.

17. In subjecting plaintiff to the treatment described herein, defendants deprived plaintiff of rights secured by the Maryland Constitution, including but not limited to the right to procedural and substantive due process, and other laws of the United States and the State of Maryland.

\* \* \*

WHEREFORE, plaintiff Higginbotham seeks reinstatement with full back pay and benefits or damages in lieu of reinstatement, compensatory damages in the amount of $500,000.00 against defendants jointly and severally, appropriate equitable relief, including but not limited to injunctive relief and declaratory relief, and his attorney's fees, expenses and costs, and such additional relief as the Court deems just.

In a memorandum in support of his opposition to the Chairman's motion to dismiss, Higginbotham stated: "The State Personnel and Pension Article of the Maryland Annotated Code ('SP & P') provides that it is 'the appointing authority' who has the power to terminate an employee." He contended that the full Commission, rather than the Chairman alone, was the "appointing authority" with the power to terminate his employment. He argued further: "Nowhere, in general personnel law or the Public Service Commission provisions, is it stated or implied in any manner that the Chair is the appointing authority or that he has any power to terminate."

The decision of the Court of Appeals in *Public Service Commission of Maryland v. Wilson*, 389 Md. 27, 882 A.2d 849 (2005), makes it clear that Higginbotham's arguments are legally correct. Wilson was terminated from her position as Manager of the Office of External Relations the day before Higginbotham was removed. Like Higginbotham, Wilson's

employment was terminated unilaterally by the Chairman, and she brought suit in the Circuit Court for Baltimore City. As noted above, the court granted her motion for summary judgment, and ordered her reinstatement.

The Court of Appeals affirmed the circuit court. The Court noted that SPP § 11–305(b)(1)–(2) provides that all non-temporary employees in the State Personnel Management System "serve[ ] at the pleasure of the employee's appointing authority," and "may be terminated from employment for any reason, solely in the discretion of the appointing authority." The Court determined that the full Commission, rather than the Chairman alone, is the "appointing authority" within the Public Service Commission. Accordingly, the Court concluded that "the 15 April 2004 termination of Wilson was unlawful because it was not effectuated by at least a majority of the Commissioners sitting at the time or by proper delegation of the Commission's 'appointing authority' powers to the Chairman." *Wilson,* 389 Md. at 59, 882 A.2d 849.

Pursuant to the Court's holding in *Wilson,* Higginbotham's allegations in his complaint support a legally sufficient cause of action. We shall therefore reverse the circuit court's dismissal of Higginbotham's complaint with respect to his claim of statutory violation.

Had we reached the opposite conclusion on the statutory violation, we would hold that the circuit court abused its discretion in not permitting the complaint to be amended. We explain.

Maryland Rule 2–322(c) provides that if the court grants a motion to dismiss pursuant to Rule 2–322(a), "an amended complaint may be filed only if the court expressly grants leave to amend." It is within the court's discretion to grant the plaintiff leave to amend his or her complaint to attempt to remedy the defects that led to dismissal. *G & H Clearing and Landscaping v. Whitworth,* 66 Md.App. 348, 356 n. 5, 503 A.2d 1379 (1986); *Gaskins v. Marshall Craft Associates, Inc.,* 110 Md.App. 705, 716, 678 A.2d 615 (1996). "[T]he circuit court's decision to deny leave to amend will be reversed

only upon a finding that the court abused that discretion." *McMahon v. Piazze,* 162 Md.App. 588, 598, 875 A.2d 807 (2005).

In his motion to dismiss, the Chairman observed that the complaint presented only "vague assertions" that Higginbotham's termination was illegal, and that a claim for "Judicial Review" was misplaced. In his response to the motion, Higginbotham pointed out the court's ruling in *Wilson* conceded that his second cause of action was improperly titled, and stated that he wished to file an amended complaint.

 "The general rule is that amendment should be allowed liberally." *McMahon,* 162 Md.App. at 599, 875 A.2d 807. Although Higginbotham did not clearly request "leave to amend," it is clear that he sought leave to amend to remedy any defects in his complaint that might warrant dismissal. Moreover, "nothing in the rule precludes the court from permitting leave to amend on its own initiative." Paul V. Niemayer & Linda M. Schuett, *Maryland Rules Commentary* 205 (3d ed. 2003). In our view, it was an abuse of discretion to refuse Higginbotham leave to file an amended complaint.

## IV. Compensatory Damages

Higginbotham also contends that the circuit court erred in dismissing his complaint with respect to his claims for compensatory damages. We addressed above his claim for compensatory damages for violation of his due process rights. Here, we consider Higginbotham's possible tort claims for the purpose of providing instruction to the circuit court on remand.

Higginbotham notes that, in the Chairman's motion to dismiss, he stated that Higginbotham could not seek compensatory damages because he had failed to comply with the procedures of the Maryland Tort Claims Act, and argues that the court should not have dismissed the complaint on that basis. The Chairman responds that he did not seek dismissal based on the failure to comply with the Tort Claims Act. Rather, he states that he merely "asked that the circuit court find that

Appellant could not seek compensatory damages because of the failure to follow the procedural requirements set forth in the MTCA."

 Pursuant to the Maryland Tort Claims Act, the State has waived its immunity from tort liability up to $200,000 "to a single claimant for injuries arising from a single incident or occurrence." Md. Code (1993, 2004 Repl. Vol.), § 12–104(a) of the State Government Article ("St. Gov't"). The Act also provides:

> A claimant may not institute an action under this subtitle unless:
>
> (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within one year after the injury to person or property that is the basis of the claim;
>
> (2) the Treasurer or designee denies the claim finally; and
>
> (3) the action is filed within 3 years after the cause of action arises.

St. Gov't § 12–106(b). "The notice requirement is mandatory, so that failure to provide the requisite notice bars any suit against the State." *Williams v. Maryland Dep't of Human Resources,* 136 Md.App. 153, 177, 764 A.2d 351 (2000).

Higginbotham submitted a claim to the Treasurer in a letter dated September 10, 2004, which was three months after he had initiated this suit in circuit court. A dismissal of Higginbotham's tort claims would have been proper because the filing of those claims was premature.

It is not clear, however, whether Higginbotham pleaded a tort claim in his original complaint. In his complaint, he stated that the Chairman's "conduct" was "malicious or grossly negligent." He also sought "compensatory damages in the amount of $500,000.00 against defendants jointly and severally," as an alternative to "reinstatement with full back pay and benefits." His specific claims were as follows:

278

## COUNT ONE

(Maryland Declaration of Rights)

\* \* \*

17. In subjecting plaintiff to the treatment described herein, defendants deprived plaintiff of rights secured by the Maryland Constitution, including but not limited to the right to procedural and substantive due process, and other laws of the United States and the State of Maryland.

18. In subjecting plaintiff to the treatment described herein, defendants acted with malice and in willful and wanton disregard of plaintiff's rights and well-being.

19. As a direct result of defendants' violations of plaintiff's rights, plaintiff has suffered damages, including but not limited to lost wages, damage to his reputation, emotional distress, and loss of enjoyment of life.

\* \* \*

## COUNT TWO

(Petition for Judicial Review)

\* \* \*

21. Defendants acted illegally, unconstitutionally, arbitrarily, capriciously, and unreasonably, in that they terminated plaintiff's employment unilaterally, without legal authority, and without notice, hearing, impartiality, or recourse or process for plaintiff.

22. As a direct result of defendants' violations of plaintiff's rights, plaintiff has suffered damages, including but not limited to lost wages, damage to his reputation, emotional distress, and loss of enjoyment of life.

 Higginbotham appears to argue (as he did in response to the motion to dismiss) that he did not plead a tort claim. He states in his brief that "the notice [to the Treasurer] was filed in the event Appellant later elected to add common law tort claims for wrongful discharge and defamation." Because he has now submitted written notice to the Treasurer, and the

Treasurer has rejected his claims, Higginbotham may be entitled to amend his complaint to include tort claims. *See Gardner v. State,* 77 Md.App. 237, 248–51, 549 A.2d 1171 (1988) (holding that claimants who filed tort claims after they had submitted a notice, but before the Treasurer issued a rejection, could amend their complaint to bring it in compliance with the Tort Claims Act, but that the case would be treated "as if it were filed on the day the amended complaint was filed").

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ½ BY APPELLANT AND ½ BY APPELLEE.**